## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JOHN BECKER,

    Plaintiff,

v.                                                   CASE NO: 8:05-cv-551-T-26MAP

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY,

    Defendant.
_____/

## **O R D E R**

Before the Court are the following cross-motions for summary judgment in this action filed pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq., for review of the denial of long term disability (LTD) benefits: (1) Plaintiff's Motion for Summary Judgment and supporting documents (Dkts. 21, 22 & 25); (2) Defendant's Memorandum in Opposition and response to statement of undisputed facts (Dkts. 29 & 30); (3) Defendant's Motion for Summary Judgment and supporting documents (Dkts. 23 & 27); (4) Plaintiff's Memorandum in Opposition (Dkt. 28); and (5) the administrative record.  (Dkt. 24).  After careful consideration of the motions and the entire file, and based on the reasons set forth below, the Court concludes that summary judgment should be granted in favor of Defendant.

**Background**

Plaintiff, John Becker, worked as a General Manager for a Bennigan's restaurant. S & A Restaurant Corporation (S & A Restaurant) is the policyholder of the LTD insurance policy issued by Defendant Hartford Life and Accident Insurance Company (Hartford Life). After Plaintiff underwent back surgery for degenerative disc disease in March 2002, he applied for and began receiving LTD benefits beginning September 5, 2002, under the "own occupation" provision,[1] or as this particular policy denotes it— "Your Occupation." Before the twenty-four month "own occupation" period ended, Hartford Life determined that Plaintiff was no longer disabled from his occupation as a restaurant manager.

Plaintiff asserts that Hartford Life considered an inaccurate job description for Plaintiff's job in that it used the descriptions in the Department of Labor's Dictionary of Occupational Titles (DOT), and those descriptions, he asserts, are outdated and not specifically tailored to Plaintiff's particular job as a general manager of a large national restaurant chain.[2] Plaintiff contends that his job as General Manager of a Bennigan's

---

[1] The "own occupation" provision generally applies to the first twenty-four month period and, thereafter, the "any occupation" provision for LTD benefits usually applies.

[2] This is the not the first time that the and applicability of the DOT descriptions has been questioned. See Kiloh v. Hartford Life Ins. Co., No. 8:04-cv-1741-T-24TGW, 2005 WL 2105957, at * 9 n. 3 (M.D.Fla. Aug. 31, 2005) (rejecting argument that administrator's decision was wrong because it used DOT definition in lieu of actual duties performed by employee where administrator considered DOT definition as well as job description prepared by employer); Crume v. Metropolitan Life Ins. Co., 417 F.Supp.2d 1258, 1277 (M.D. Fla. 2006) (holding that failure of insurer to furnish the

requires far more strenuous activity than the definition supplied by the DOT's description of restaurant manager. Hartford Life counters that Plaintiff's desire to be declared disabled from his specific job at Bennigan's, as opposed to a general set of tasks associated with a restaurant manager as defined in the DOT, is not accommodated by the terms of the LTD policy.

Plaintiff further accuses Hartford Life of cherry-picking[3] information from the medical records submitted on behalf of Plaintiff by extracting only that evidence which would substantiate disability. Hartford Life defends the decision of Robyn Cote, its appeal specialist.

---

employer's statement of the job to its medical consultants did not taint the decision because a "Unisource Job Description" was given to all three psychiatrists and that description made it clear what the job requirements were and any other job description would have been deemed cumulative); Fish v. Unum Life Ins. Co., No. 6:04-cv-1716-ORL-22JGG, 2005 WL 3186089, at * 19 (M.D. Fla. Nov. 29, 2005) (rejecting claimant's assertion that Unum used "unduly stale" job description when it used DOT's descriptions from 1981, because advent of modern computer systems lessens, not increases, burden of restaurant Chick-Fil-A franchise owner); Richards v. Hartford Life & Accident Ins. Co., 356 F.Supp.2d 1278, 1287 (S.D. Fla. 2004) (holding that even if policy had left "Your Occupation" undefined, it was proper for administrator to consult DOT for definition because insurers "cannot be expected to anticipate every assignment an employer might place upon an employee outside the usual requirements of his or her occupation.").

[3] "Cherry-picking" from the limitations identified by a particular doctor, rather than rejecting that doctor's opinion as a whole, typifies arbitrary and capricious conduct on the part of the insurer. See Rementer v. Metropolitan Life Ins. Co., No. 6:04-cv-1148-Orl-22JGG, 2006 WL 66721, at * 2 (M.D. Fla. Jan. 10, 2006).

**Terms of the LTD Plan Documents**

The parties disagree as to whether discretion is expressly granted to Hartford Life under the terms of the LTD Plan documents. The applicable Plan documents included in the administrative record consist of a Group Benefit Plan for Long Term Disability with a Plan effective date of September 1, 2000, together with endorsements effective June 1, 2001 and July 1, 2003. (Dkt. 24 at H61-108).[4] The clear language of the Plan undeniably grants Hartford Life "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy." (Dkt. 24 at H86).

The endorsement effective June 1, 2001, made changes to the definition of disability. (Dkt. 24 at H11-12). The amendment and endorsement to the policy issued on July 10, 2003, provides that any changes between this policy and the previously issued policy are effective June 1, 2001. (Dkt. 24 at H1-10). The July 2003 amendment states, also in bold print, that "[a]ll other terms, conditions and dates remain unchanged." (Dkt. 24 at H1).

---

[4] Plaintiff seizes upon the policy and endorsement effective October 1, 1992. (Dkt. 24 at H608-625). The 1992 endorsement changed the definition of total disability for "executives" to being "prevented by Disability from doing all the material and substantial duties of your own occupation on a full time basis." (Dkt. 24 at H609-610 & 616). It is clear from the documents in the administrative record, however, that the 1992 policy has been amended and certain documents replaced and is therefore not applicable to this claim. The definition of disabled found in the 1992 policy is not applicable to this claim.

Both the June 2001 and the July 2003 endorsements define "disabled" as being prevented by sickness or injury "from performing one or more of the Essential Duties of Your Occupation." (Dkt. 24 at H12 & 87).[5] "Essential Duty" is defined per the terms of the policy as:

> a duty that:
> 1. is substantial, not incidental;
> 2. is fundamental or inherent to the occupation; and
> 3. can not be reasonably omitted or changed.
>
> To be at work for the number of hours in your regularly scheduled workweek is also an Essential Duty.

(Dkt. 24 at H88). "Your Occupation" means "your occupation as it is recognized in the general workplace." (Dkt. 24 at H93). The policy further provides that "Your Occupation" is not defined to mean "the specific job you are performing for a specific employer or at a specific location." (Dkt. 24 at H93).

Hartford Life retained the right to require due proof of the disability and continued disability. (Dkt. 24 at H71-71 & 82). Benefits would be payable only upon proof of loss "satisfactory" to Hartford Life. (Dkt. 24 at H71 & H624). Benefits would cease to be paid if the employee failed to furnish "Proof of Loss, when requested by [Hartford Life]." (Dkt. 24 at H72). The Proof of Loss section includes a fairly lengthy and detailed

---

[5] The July 1, 2003, endorsement changes the definition of disability and disabled. (Dkt. 24 at H108). The endorsement deletes the twenty-four month period and the following sentence:
> After that, you must be so prevented from performing one or more of the Essential Duties of Any Occupation.

This change is not relevant to the issues at hand.

description of documents and information required to be provided by the claimant with the proviso that "[a]ll proof submitted must be satisfactory to us."[6] This requirement of proof to be satisfied only at Hartford Life's call is one of the telltale signs that full discretion is lodged in Hartford Life. See Curran v. Kemper Nat'l Serv., Inc., No. 04-14097, 2005 WL 894840, at * 3 (11th Cir. Mar. 16, 2005) (citing Jett v. Blue Cross & Blue Shield of Ala., Inc., 890 F.2d 1137, 1139 (11th Cir. 1989)).[7]

**Medical Evidence Pertaining to Disability**

Plaintiff underwent a "lumbar laminectomy and instrument fusion L5-S1" on March 5, 2002. Plaintiff's surgeon, Joseph Flynn, Jr., reported that Plaintiff was unable to work as of May 30, 2002. (Dkt. 24 at H597). In mid-July 2002, Dr. Flynn reported Plaintiff's post-operative discomfort and documented the treatment as "continue moderate activity, avoid bending, lifting and twisting." (Dkt. 24 at H598). The notes from his examination dated July 11, 2002, reveal that Plaintiff was "[d]oing well postoperatively." (Dkt. 24 at H599). Because Dr. Flynn found no reason why Plaintiff could not return to work on a limited duty status, he released him to return to work for one month beginning August 30, 2002. (Dkt. 24 at H599 & 601). Dr. Flynn prohibited Plaintiff from working more than thirty hours per week and eight hours per day. (Dkt. 24 at H601). He

---

[6] It is clear from the terms of the policy that "us" refers to Hartford Life.

[7] Curran, as an unpublished opinion of the Eleventh Circuit, constitutes persuasive, and not binding, authority. See 11th Cir. R. 36-2 and I.O.P. 6.

restricted his pushing, pulling, and repetitive lifting, in addition to limiting non-repetitive lifting to no more than ten pounds. (Dkt. 24 at H601).

Plaintiff began receiving LTD benefits and returned to work part-time as a Senior Manager, rather than a General Manager, because he could not work full-time to adequately perform the duties of General Manager. (Dkt. 24 at H524). On October 3, 2002, Dr. Flynn examined Plaintiff and found that his back pain was continuing to improve even after he had returned to work for thirty hours per week. (Dkt. 24 at H492). He assessed Plaintiff as doing well postoperatively and noted the "excellent resolution of radicular pain." (Dkt. 24 at H492).

Dr. Flynn again examined Plaintiff on December 12, 2002, and noted that Plaintiff had begun to experience increasing lower back pain with the continuation of part-time work. (Dkt. 24 at H493). Dr. Flynn recommended that Plaintiff decrease weekly work hours to twenty hours per week. (Dkt. 24 at H493). On December 26, 2002, the senior benefits administrator with S & A Restaurant wrote to Hartford Life to inform them that Plaintiff was terminated effective January 3, 2003, for his inability to perform the routine duties of his job "due to his current medical condition." (Dkt. 24 at H521). Finally, on February 14, 2003, Plaintiff saw Dr. Flynn and noted his continued low back pain and recommended that he seek an alternative lifestyle and consider retirement. (Dkt. 24 at H494).

Six months later, on August 14, 2003, Plaintiff was examined again by Dr. Flynn. (Dkt. 24 at H479). Dr. Flynn noted his continued low-grade lower back pain, increasing

with activity and commented that he remained unable to work. (Dkt. 24 at H479). Plaintiff saw Dr. Flynn again six months later on February 12, 2004. Dr. Flynn examined Plaintiff and noted that Plaintiff had some residual back pain. (Dkt. 24 at H418). He noted that Plaintiff could "resume activity with no lifting over 30 pounds." (Dkt. 24 at H418).

When Hartford's vocational rehabilitation counselor spoke with Dr Flynn in early April 2004, about Plaintiff's ability to return to work, Dr. Flynn indicated that Plaintiff could resume activity with no lifting over thirty pounds. (Dkt. 24 at H400). The counselor asked Dr. Flynn to clarify that the only restriction was lifting thirty pounds or more. He confirmed in writing that it was the only restriction by checking the box indicating that Plaintiff could "return to work full-time (8 hours/day) with a 30 lb. lifting restriction as his only restriction," as opposed to checking the box indicating there were any additional restrictions to his returning to work. (Dkt. 24 at H400).

## Denial of LTD Benefits and Ensuing Appeal

On April 26, 2004, Hartford Life discontinued LTD benefits for Plaintiff because he no longer met the definition of Totally Disabled. (Dkt. 24 at H116-120). Hartford Life found that a review of the job description of a restaurant manager in the national economy shows that the Essential Duties, as that term is defined in the Plan, are considered to be "light" work. (Dkt. 24 at H118). Relying on all the medical records, and particularly those from Dr. Flynn dated February 12, 2004, Hartford Life reiterated Dr. Flynn's findings that Plaintiff could resume activity and return to work with only the

restriction of lifting no more than thirty pounds. (Dkt. 24 at H119). Plaintiff appealed the denial of benefits.

On May 6, 2004, Dr. Flynn examined Plaintiff and noted that Plaintiff "is limited in his ability to work. He has training as a restaurant manager; was unable to keep the pace and the hours required of such a position because of his lower back problems." (Dkt. 24 at H306). Dr. Flynn wrote that Plaintiff had not seen any changes since his last visit, which would have been in February 2004. (Dkt. 24 at H306). Then again, on August 5, 2004, Dr. Flynn examined Plaintiff and noted that he had significant limitations in that he was unable to sit for more than thirty minutes at a time or stand continuously for more than one hour, and should lift no more than twenty-five pounds. (Dkt. 24 at H304). His report shows that the patient had not seen any changes since his last visit in May 2004. (Dkt. 24 at H305).

On October 28, 2004, Dr. Flynn wrote to Plaintiff's attorney, apologizing for his lack of thoroughness in recommending restrictions for Plaintiff. (Dkt. 24 at H235). He changed the previous thirty-pound limit of February 2004 to twenty-five pounds, and opined that Plaintiff's employability was markedly limited by his spinal condition and that he did not expect Plaintiff's condition to either worsen or improve. (Dkt. 24 at H235). He noted that Plaintiff's condition had not significantly changed over the course of the past year. (Dkt. 24 at H235).

Plaintiff submitted Dr. Flynn's October 2004 letter to Hartford Life in support of his appeal as well as a vocational disability assessment performed by an independent

vocational counseling service. (Dkt. 24 at H236-240). In the assessment, the service took issue with the age of the DOT description of restaurant manager. The DOT definition provides as follows:

> Coordinates food service activities of hotel, restaurant or other similar establishment or at social functions: Estimates food and beverage costs and requisitions or purchases supplies. Confers with food preparation and other personnel to plan menus and related activities such as dining room, bar and banquet operations. Directs hiring and assignment of personnel. Investigates and resolves food quality and service complaints. May review financial transactions and monitor budget to ensure efficient operation and to ensure expenditures stay within budget limitations.

(Dkt. 24 at H236). The service noted that according to the DOT, the job of restaurant manager is considered "light" work with light being defined as exerting up to twenty pounds of force occasionally and/or up to ten pounds of force frequently. (Dkt. 24 at H236). The light category is just above sedentary. (Dkt. 24 at H236). "A job should be rated light work when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls or when the job requires working at a production rate pace entailing constant pushing and/or pulling of material even though the weight of those materials is negligible." (Dkt. 24 at H236).

The report targeted the DOT's assessment that the job of restaurant manager *never* required climbing, balancing, stooping, kneeling, crouching, or crawling. (Dkt. 24 at H236-237). After interviewing a couple of other national restaurant chains, the service

reached the conclusion that the job required all of these activities, and the DOT was incorrect in stating otherwise. (Dkt. 24 at H 237).

On January 6, 2005, Hartford Life upheld the denial of benefits. (Dkt. 24 at H109-112). The letter states that the April 2004 decision was based on the "medium" physical capabilities that Dr. Flynn noted that Plaintiff could perform. Hartford Life also compared the "essential duties" of the position of a General Manager at Bennigan's with the DOT classification of "Manager, Food Services." The letter sets forth the comparison as follows:

> The essential duties involving the planning, directing, and coordinating of activities of an organization that serves food and beverages are equal. It is noted that at S & A Restaurant Group, a combination of three Occupation descriptions are utilized, i.e., Kitchen Manager, Service Manager, and Bar Manager to encompass the essential duties of own occupation with the employer, however, these are adequately covered by one DOT occupation of Manager, Food Services. The physical demands of own occupation in the national economy are less than own occupation with the employer. Own occupation in the national economy is a Light occupation involving frequent reaching, handling, talking, and hearing. Own occupation with the Employer; however, requires continuous stooping, reaching, and pushing, pulling, lifting, and carrying of 1-50 lbs. up to 60% of the time which falls within the Medium exertional classification. The environmental conditions are equal in terms of working in a moderately noisy environment. Also, the non-exertional requirements are equal in terms of directing, controlling, planning; performing a variety of duties; dealing with people; making judgments and decisions; coordinating; speaking-signaling, and handling. In summary, while the essential duties, environmental conditions, and non-exertional requirements are equal, the physical demand requirements for own occupation in the national economy are less than own

>occupation with the employer in terms of the lifting requirements as defined and classified in the Dictionary of Occupational Titles, 1991 ed.

(Dkt 24 at H 110-111).

Hartford Life acknowledges in the letter that Dr. Flynn as treating physician "may not be in agreement with his original 2/14/04 medical note." (Dkt. 24 at H111). Recognizing that Dr. Flynn's October 2004 letter revised Plaintiff's limitations to a light work level, Hartford Life found that the comparison set forth above supported Plaintiff's ability to work in his own occupation as a restaurant manager as seen in the general workplace, which is categorized as a light job, and therefore benefits must still be denied. (Dkt. 24 at H111). Hartford Life stressed that the terms of the Plan did not require that Plaintiff had to be able to perform a job for any specific employer, such as Bennigan's, or at a specific location. (Dkt. 24 at 111). Hence, Hartford Life reviewed the additional information provided by Dr. Flynn and the vocational service's report and concluded that "no physical/medical reason" existed to explain "why [Plaintiff] should be unable to perform the duties of light work in a full time setting and his occupation is classified as light in the national economy." (Dkt. 24 at H111).

**Standard of Review**

Under the approach set forth in <u>Williams v. BellSouth Telecomm., Inc.</u>, 373 F.3d 1132, 1137-38 (11th Cir. 2004), this Court must first apply the de novo standard to ascertain whether Hartford Life's benefits-denial decision is "wrong," as that term is

-12-

defined in case law. If this Court determines that the decision is not "wrong," then the inquiry ends and the decision will be affirmed.

**Analysis**

For the reasons expressed below, the Court finds that both Hartford Life's decision to initially terminate LTD benefits in April 2004 and its decision on appeal to stand by the denial, were not de novo "wrong." The Plan documents support the job description applied by Hartford Life in denying LTD benefits, and the medical records support a finding that Plaintiff could perform light work and therefore his own occupation as a restaurant manager in the general workplace. The Court further finds that Hartford Life appropriately considered the additional information it had before it on appeal.

*Job Description*

Plaintiff urges this Court to require that Hartford Life use the job description found in the employer's statement section of the application for Plaintiff's LTD benefits submitted to Hartford Life in September 2002. (Dkt. 24 at H592-593). The senior benefits administrator of S & A Restaurant described the position of General Manager at Bennigan's as requiring (1) a sixty-hour work week, (2) daily pushing, pulling, lifting and carrying of weight from one to fifty pounds, (3) physical work involving lifting, balancing, and reaching supplies 60 % of the time, (4) sitting involving computer input, writing and talking 20 % of the time, and (5) walking and standing around the restaurant 20 % of the time. (Dkt. 24 at H592-593). There is no explanation of how often each day and exactly how much weight each day— from one to fifty pounds— is carried. A

lengthy job description titled "General Manager Performance Management" appears in the administrative record. (Dkt. 24 at H586-589). The lengthy job description, however, does not include any of the physical demands of the job.

Contrary to Plaintiff's assertions, the Plan documents do support Hartford Life's reliance on the job description found in the DOT. In the applicable Plan documents, including the 2001 and 2003 endorsements and amendments to the Plan, an employee is disabled if he is prevented from performing one or more of the essential duties of his occupation. His occupation is defined as the occupation as it is recognized in the general workplace. The employee's occupation is further defined *not* to mean "the specific job you are performing for a specific employer or at a specific location."

Plaintiff argues that his job at Bennigan's cannot be re-defined to fit within the DOT.[8] To bolster his position, he asserts that Hartford Life incorrectly made the decision that the jobs of kitchen manager, service manager, and bar manager,[9] were consumed by DOT's position of "Manager, Food Services." Plaintiff urges that the DOT's description is not "objectively reasonable"[10] and that there is some duty on the part of the plan

---

[8] See Gallagher v. Reliance Standard Life Ins. Co., 305 F.3d 264, 272-73 (4th Cir. 2002) (rejecting claimant's contention that material duties set forth in DOT description did not match actual job because failure to include travel requirement was only one duty not included).

[9] Plaintiff does not deny that the position of General Manager at a Bennigan's includes these three job duties.

[10] To the extent "occupation" is not specifically defined by the Plan documents, some courts have adopted an "objectively reasonable" standard to determine whether the DOT definition fits the job. See Gallagher v. Reliance Standard Life Ins. Co., 305 F.3d

administrator to consider the nature of the workplace at which the claimant was employed. See, e.g., Shahpazian v. Reliance Standard Life Ins. Co., 388 F.Supp.2d 1368 (N.D. Ga. 2005); Greene v. Reliance Standard Life Ins. Co., No. Civ. A. 7:03-cv-00025, 2004 WL 2634416, at * 1-2 (W.D. Va. Oct. 26, 2004). Having reviewed all job descriptions in the administrative record, this Court, however, finds that Hartford Life was not wrong when it applied the DOT's definition and the employer's definition to Plaintiff's occupation as a General Manager.

While some consideration of the actual workplace is necessary to ascertain which DOT definition to apply to the particular occupation, the clear terms of the Plan documents in this case neither require compliance with a job for a specific employer nor compliance with a job at a specific location. See Richards v. Hartford Life & Accident Ins. Co., 356 F.Supp.2d 1278, 1287 (S.D. Fla. 2004) (holding that clear terms of plan documents defining "Your Occupation" as it is recognized in the "general workplace" and not "the specific job you are performing for a specific employer," permitted situation where person might not be able to perform a specific job assignment, but still perform duties generally understood to be part of his occupation). So long as the employee can perform the general duties of his occupation in a non-employer specific setting, he need not be able to perform each and every particular assignment. Id. Thus, if the medical evidence and submissions support a finding that Plaintiff can perform the duties of a

---

264, 273 (4th Cir. 2002).

restaurant manager in the general workplace, as opposed to Bennigan's in particular, then Plaintiff is not disabled according to the terms of the Plan.

In reviewing the cases cited by Plaintiff, it should be noted that the terms of the plan documents in <u>Shahpazian</u> and <u>Greene</u> are distinguishable. In <u>Shahpazian</u>, the plan referred to the employee's "regular occupation" and did not contain any language excluding consideration of the specific employer or specific location, as is the case here. In <u>Greene</u>, the district court sitting in Virginia remanded the case to the administrator for a deliberate and principled analysis, because the administrator had failed to consider the employee's actual duties, which were in the record, and instead, relied solely on the DOT description of salesperson, which did not fit the employee's occupation of selling industrial equipment. The court compared the actual job duties with the DOT's description and found them incompatible. Also, as in <u>Shahpazian</u>, the plan documents in <u>Greene</u> contained the reference to "regular occupation" and did not exclude consideration of the specific employer or location, unlike the instant case.

Here, Hartford Life considered, but was not bound by, the duties of a General Manager at a Bennigan's restaurant, which were set forth in the application for benefits, as well as the lengthy job description containing no articulated physical requirements. In keeping with the terms of the Plan, Hartford Life compared the DOT definition of restaurant manager to one at Bennigan's without focusing on the specific employer— Bennigan's— or the specific location of that particular Bennigan's restaurant. The duties listed, including the physical demands, for the Bennigan's position for the most part

coincide with the DOT's definition. For example, the essential duties of a restaurant manager in the general workplace, and at Bennigan's, consists of planning, directing and coordinating activities of a business that serves food and beverages, including the necessary physical demands of frequent reaching, handling, talking and hearing. The one difference between the two descriptions is lifting an item, perhaps daily, weighing between one and fifty pounds. There is no evidence in the administrative record, however, indicating how often, and whether, the lifting of an item over twenty-five or thirty pounds occurs. In any event, it is not necessary that Plaintiff be able to perform a specific assignment, for example lifting over twenty-five pounds, as long as Plaintiff is able to perform the general duties of the job of restaurant manager in the general workplace or labor market. See also Clark v. Hartford Life & Accident Ins. Co., No. 8:05-cv-67-T-23MAP, 2006 WL 890660, at * 4 (M.D. Fla. Apr. 6, 2006) (holding that "own occupation" when not defined in the plan documents means the occupation "as it is generally performed in the labor market").

Because Hartford Life considered the DOT description of restaurant manager[11] in view of the Plan's clear language defining occupation as one in the general workplace, or national economy as Hartford Life expressed it, Hartford Life was not wrong in its finding that only light work was necessary to perform the duties of a restaurant manager. Notably, Dr. Flynn, Plaintiff's treating physician, initially released Plaintiff to work at a

---

[11] This Court has listed several cases permitting the use of the DOT description in similar situations. See footnote 2 of this Order.

medium level of exertion. Even accepting Dr. Flynn's change of restrictions and finding Plaintiff capable of only light work, the DOT description classifies the job as light work and therefore Plaintiff is not disabled.

*Physical Restrictions*

Two reasons under the Plan documents why benefits may cease include (1) when an employee fails to furnish proof of disability or (2) when the employee is no longer disabled as defined in the policy. (Dkt. 24 at H72). These reasons are applicable to this case. When Hartford Life inquired of Dr. Flynn whether Plaintiff could return to work in April 2002, Dr. Flynn unequivocally stated that Plaintiff could return to work at thirty hours per week and lift no more than thirty pounds. He confirmed the thirty-pound restriction as the sole constraint on Plaintiff. Because Dr. Flynn found that Plaintiff was capable of performing work at the "medium" level, Hartford Life discontinued LTD benefits, particularly in view of the fact that the level of work necessary was "light" according to the DOT description.

After benefits were denied, Dr. Flynn changed Plaintiff's restrictions to lifting no more than twenty-five pounds, sitting no more than thirty minutes at a time, and standing no more than one hour at a time. Dr. Flynn explained in his letter that perhaps he had lacked thoroughness in his recommendations when he designated restrictions in April 2004. He did, however, note that Plaintiff's condition had not changed over the course of

a year.[12] In any event, even if Hartford Life gave Dr. Flynn's change of heart full weight, which it appears to have done, the new restrictions still fit within the essential duties of restaurant manager in the general workplace. Because Plaintiff continued to qualify for light duty work as a restaurant manager, Plaintiff did not qualify for continuation of LTD benefits as he did not fit the definition of disabled. Hartford Life did not make a wrong decision when it applied the medical evidence according to the definitions and terms of the Plan.

It is therefore **ORDERED AND ADJUDGED** as follows:

(1) Plaintiff's Motion for Summary Judgment (Dkt. 25) is **DENIED**.

(2) Defendant's Motion for Summary Judgment (Dkt. 23) is **GRANTED**.

(3) The Clerk is directed to enter final summary judgment in favor of Defendant and against Plaintiff on all claims.

(4) The Clerk is directed to close this file.

**DONE AND ORDERED** at Tampa, Florida, on May 17, 2006.

        s/*Richard A. Lazzara*
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**

---

[12] Both parties make much of this comment, arguing on the one hand that Plaintiff was always unable to work because his condition had not changed, and, on the other hand, that Dr. Flynn's new opinion was not based on a change in Plaintiff's medical condition and therefore not supported by objective medical evidence. Because it can be argued both ways, it seems to warrant little consideration in and of itself.

**COPIES FURNISHED TO**:
Counsel of Record